UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.: 3:12-cv-00294-JCS

Phillip Bedford,

                    Plaintiff,

          v.

City of Hayward, et al.,

                    Defendants.

## I.     INTRODUCTION

Plaintiff Phillip Bedford ("Plaintiff") brings this action against the City of Hayward and six police officers of the Hayward Police Department ("Defendants").[1]  Plaintiff asserts violations of 42 U.S.C. §§ 1983, 1985 and 1986, as well as state law claims for assault, battery and false imprisonment.  Defendants have moved to dismiss Plaintiff's Second Amended Complaint in its entirety, contending the state claims fail for Plaintiff's failure to exhaust administrative remedies, and the federal claims fail because Plaintiff has failed to state a claim upon which relief may be granted.  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  The Court finds that this Motion is appropriate for decision without oral argument pursuant to the Local Rule 7-1(b), and hereby vacates the motion hearing. However, both parties must still attend the scheduled case management conference on October 16, 2012 at 1:30p.m.  For the reasons stated below, the Court holds that Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

---

[1] The police officers who are individual defendants in this action are Officer Rene Jimenez, Officer Edwin Anderson, Officer Domingo Rodriguez, Sergeant Ruben Pola, Lieutenant Christine Orrey, Captain Bob Palermini, and DOES 1-20.

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Factual Allegations

The heart of Plaintiff's claims arises from an incident which occurred on July 8, 2011 in Hayward, California.  *See* Second Amendmend Complaint ("SAC") ¶¶ 8-25.  Plaintiff states that while he was on his way to pick up his seven-year-old nephew and take him to the skateboard park, he was abruptly stopped and searched by three Hayward police officers for no reason.  *Id*. ¶ 8.  Plaintiff is African American.  *Id.* ¶ 44.  This was not the first time Plaintiff had been stopped by Hayward police officers.  Plaintiff alleges that for one year leading up to July 8, 2011, he would visit his nephew about twice a week, and once a month (on about ten to twelve occasions), police officers would stop Plaintiff to ask what he was doing in the neighborhood.  *Id.* ¶ 7.  On each occasion, Plaintiff would ask the purpose of the stop, but was never given an answer.  "During several of the stops, [Plaintiff] was threatened with arrest, ordered to the ground, his person and property searched, his identification taken from him and a warrant check run."  *Id.*  On each occasion, the police officers would let Plaintiff go once he was was found to be free of outstanding warrants.  *Id.*

Plaintiff explains the July 8, 2011 incident in greater detail.  He alleges that on July 8, 2011, while he was on his way to take his nephew to the skateboard park, three police cars approached Plaintiff rapidly such that Plaintiff "felt he was about to be run down."  *Id.* ¶ 8.  The names of the officers in the vehicles, which Plaintiff would only later come to learn, were Domingo Rodriguez, Rene Jimenez and Edwin Anderson.  *Id*. ¶¶ 3, 24.  After approaching Plaintiff, the officers demanded that Plaintiff drop to the ground.  *Id.* ¶ 8.  *Id.*  Plaintiff alleges that first, he politely asked the reason why they were ordering him to the ground, but the officers refused to answer his question.  *Id.* ¶ 9.  Plaintiff then "protested he was not a worm and should not have to crawl in the dirt like a worm."  *Id.*  The officers again demanded that Plaintiff drop to the ground, and Plaintiff complied.  *Id.*

Plaintiff then inquired as to the officers' "probable cause," (using those words), and Defendant Anderson replied that they were responding to a call and that Plaintiff fit the description of someone who had attempted to snatch women from their cars, rob and rape them.

*Id.* ¶ 10.  One of the officers, though Plaintiff does not say which one, said he had followed Plaintiff while walking down Mission Boulevard from the Bay Area Rapid Transit ("BART") station in South Hayward.  *Id.*  Plaintiff explained to the officers that was impossible because he had not walked from the BART station, but rather had taken the bus, and he had a time-stamped Clipper Card as proof.  *Id.*

The officer then bent over, brought his face close to Plaintiff's so that their noses almost touched, and pointed his finger at Plaintiff's face, touching it several times while he yelled at Plaintiff and made aggressive gestures.  *Id.* ¶ 11.  The officer yelled that Plaintiff was "lying through his teeth" and reiterated that he had personally followed Plaintiff from the South Hayward BART station.  *Id.* ¶ 12.  While the officer yelled with his face close to Plaintiff's, he "sprayed [Plaintiff's] face with sputum."  *Id.* ¶ 13.  Plaintiff turned his face from left to right several times to avoid the officer's foul breath and saliva, but each time Plaintiff turned his face, the officer shadowed Plaintiff's movement so that they remained face-to-face.  *Id.*  This continued for several minutes such that by the end, Plaintiff's face was covered with the officer's saliva.  *Id.*

The three officers—Defendants Jimenez, Rodriguez and Anderson—detained Plaintiff, searched his person and property, and ran a warrant check.  *Id.* ¶ 14.  When the warrant check came back clean, the officers allowed Plaintiff to leave and no charges were ever filed.  *Id.* ¶¶ 14, 18.  Before Plaintiff left the scene, however, he sought to retrieve the names of the three officers who had stopped him.  Plaintiff was able to read two of the officers' names on their respective uniforms.  *Id.* ¶ 15.  However, one of the officers covered his name and refused to tell it to Plaintiff when asked.  *Id.*

That afternoon, Plaintiff and his nephew went to the Hayward Police Station and filed a complaint against the three officers.  *Id.* ¶ 19.  A sergeant and supervisor of the three officers—Defendant Pola—took the complaint.  *Id.*  Defendant Pola refused to tell Plaintiff the name of the officer who Plaintiff had been unable to identify.  *Id.*  He tried to dissuade Plaintiff from filing a complaint, telling Plaintiff the officers released him after the victims could not identify him.  *Id.*  According to Plaintiff, however, the officers made no attempt to have Plaintiff identified by the

3

supposed victims. *Id.* ¶ 16. Plaintiff filed the complaint despite Defendant Pola's attempt to dissuade him. *Id.* ¶ 19.

In the following months, Plaintiff inquired several times regarding the status of his complaint. *Id.* ¶ 21. Defendant Pola referred Plaintiff to Lieutenant Orrey and Captain Palermini, two other defendants in this action who are supervisors of the three officers and Defendant Pola. *Id.* Defendants Orrey and Palermini informed Plaintiff that the allegations against the officers were "exonerated." *Id.* When Plaintiff inquired what this meant, he was informed it meant the facts described in the complaint occurred, but no disciplinary measures would be taken against the officers. *Id.* ¶¶ 21, 23. Plaintiff informed them he thought "the result of the investigation was unsatisfactory and asked that the matter be re-investigated," but received no response. *Id.* ¶ 25. Plaintiff also inquired again for the name of the third officer, and five months later, Defendants Pola, Orrey and Palermini released the names of the three officers. *Id.* ¶¶ 21, 24.

Plaintiff filed a complaint in the Northern District of California on January 19, 2012. *See* Dkt. No. 1. On May 9, 2012, Plaintiff filed his First Amended Complaint. *See* Dkt No. 25. On July 26, 2012, with the Court's permission, Plaintiff filed his Second Amended Complaint. *See* Dkt. Nos. 35-36.

**B.      Second Amended Complaint**

Plaintiff asserts several state and federal claims against Defendants.[2] Plaintiff's state law claims are for assault, battery and false imprisonment. Plaintiff brings federal claims under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985 and 1986, alleging constitutional violations for false arrest, excessive force, as well as conspiracy to unlawfully run warrant checks on African Americans. In light of Plaintiff's *pro se* status, the Court construes Plaintiff's § 1983 claim for

---

[2] Plaintiff's specific counts are as follows: (I) violation of civil rights under § 1983; (II) false arrest in violation of § 1983; (III) excessive force in violation of § 1983; (IV) conspiracy in violation of § 1985; (V) failure to prevent violations of Plaintiff's civil rights in violation of § 1986; (VI) failure to implement appropriate policies, customs, and practices in violation of § 1983; (VII) common law assault for being placed in fear and apprehension of being struck by a car; (VIII) common law assault for being placed in fear and apprehension of being struck in the face; (IX) common law battery for being struck with Defendant's finger in the face; (X) common law assault for being placed in fear and apprehension of being spat upon in the face; (XI) common law battery for being spat upon in the face; and (XII) common law false imprisonment.

false arrest as a claim for unlawful detention without reasonable suspicion.  Plaintiff asserts the claims against all Defendants, in some instances, without differentiation to the particular claims against each individual Defendant.  Accordingly, the Court also construes the claims as to each Defendant.

### C.    Defendants' Motion to Dismiss

On August 2, 2012, Defendants filed a Motion to Dismiss all claims asserted in Plaintiff's Second Amended Complaint.  *See* Dkt. No. 37 (Defendant's Motion to Dismiss) ("Motion").  Defendants argue that the state law claims for assault, battery and false imprisonment must be dismissed because Plaintiff has failed to allege compliance with the requirements of the California Tort Claims Act.  Motion at 1-6.  Defendants argue the federal claims fail for Plaintiff's failure to state a claim entitling him to relief.  *Id.* at 7-15.  In response, Plaintiff contends that he complied with the California Tort Claims Act and stated sufficient claims for relief for each cause of action.  *See* Dkt. No. 59 (Plaintiff's Opposition to Defendants' Motion to Dismiss) ("Opp.").  The parties' specific arguments will be addressed in further detail below.

### III.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N.Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true and contrue(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).

Generally, the plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The factual allegations must be definite enough to "raise a right to relief above the speculative level on

the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

"[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare

recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556

U.S. at 663.

Since *Twombly*, the Supreme Court has reaffirmed that a *pro se* complaint "must be held

to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d

338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam)).  While

the pleading standard may be higher after Twombly and Iqbal, the courts' "obligation" remains,

such that "where the petitioner is *pro se*, particularly in civil rights cases," the court must

"construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* (citing

*Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc)).

## IV.     ANALYSIS

### A.     State Law Claims

Defendant alleges that Plaintiff's state law tort claims for battery, assault and false

imprisonment must be dismissed because Plaintiff failed to comply with the requirements of the

California Tort Claims Act, California Government Code § 900, *et seq*. ("CTCA").  *See* Motion at

1-6.  Under the CTCA, a plaintiff must file a claim for money damages with a public entity before

filing a lawsuit against the public entity or a public employee.  Cal. Gov't Code § 945.4; *State of*

*California v. Superior Court of Kings County*, 32 Cal.4th 1234 (2004) ("*Bodde*").  Claims for

personal injury must be presented within six months after the accrual of the cause of action, while

certain other claims may be submitted within one year.  *See* Cal. Gov't Code § 911.2.  Failure to

allege facts demonstrating or excusing compliance with the claim presentation requirement is

grounds for dismissal of a plaintiff's state law tort claims.  *Bodde*, 32 Cal.4th at 1245; *see also*

*Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The

California Tort Claims Act requires, as a condition precedent to suit against a public entity, the

timely presentation of a written claim and the rejection of the claim in whole or in part.").

As a preliminary matter, the Court notes that Plaintiff alleges no facts in his Second

Amended Complaint which demonstrate compliance with the CTCA.  However, Plaintiff

contends in his Opposition that he complied with the CTCA's requirements by filing a complaint on July 8, 2011 with the Hayward Police Department. Opp. at 12-13. However, as Defendants discuss in their Reply, filing a complaint with the Hayward Police Department does not fulfill Plaintiff's obligation under the CTCA. *See* Dkt. No. 56 (Defendants' Reply to Plaintiff's Opposition) ("Reply") at 2. The complaint process Plaintiff used on July 8, 2011 with the Hayward Police Department is provided pursuant to California Penal Code § 832.5, which requires public departments employing peace officers to "establish a procedure to investigate complaints by members of the public." *See* Cal. Penal Code § 832.5. The CTCA provides for a complaint process which is separate and distinct from complaints filed against peace officers. Under the CTCA, a claim against a public entity "shall" be presented to "the clerk, secretary, auditor, or to the governing body at its principal office." Cal. Gov't Code § 915(a). Plaintiff does not allege facts, in his Second Amended Complaint or in his Opposition, that show he filed a complaint with the correct entity in order to put the City of Hayward on notice of his claims.

Plaintiff also contends he complied with the CTCA by filing a claim with the City of Hayward on September 17, 2012. Opp. at 12-13. However, this argument rests on two incorrect theories of law. First, Plaintiff contends that the one-year limitation period in § 911.2 for "any other cause of action" applies to his claim instead of the six-month limitations period for personal injuries. *See* Cal. Gov't Code § 911.2. However, Plaintiff's state law tort claims are for assault, battery and false imprisonment, all of which constitute theories of personal injury. *See* Cal. Civ. Proc. Code § 29 ("injury to the person" is the default tort theory). Plaintiff also argues that the "cause of action accrued on October 28, 2011, the last manifestation of the defendants' effort to obstruct plaintiff's July 8, 2011 claim, when they finally revealed the names of certain defendants." Opp. at 12. However, Plaintiff's cause of action accrued much earlier on July 8, 2011, the date of the incident and also the date Plaintiff was aware of all the elements which constitute his state law tort claims. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (quoting *Slovensky v. Friedman,* 142 Cal.App.4th 1518, 1528 (2006) ("A cause of action accrues when the claim is complete with all of its elements[, which] ordinarily occurs on the date of the plaintiff's injury")). Thus, Plaintiff's September 17, 2012 complaint

1    with the City of Hayward does not comply with the CTCA's requirements because he must have

2    filed his complaint within six months of July 8, 2011.

3         Plaintiff next contends that even if his government claim is untimely, he complied with §

4    915(a) which allows claimants to petition a public entity for leave to present a late claim.  Opp. at

5    13.  However, Plaintiff misreads § 915(a), which governs the entity to which a claim must be

6    submitted, not the timeframe to submit the claim.  Section 911.4(b), which does govern the

7    timeframe, provides that claimants may petition the public entity for leave to file an untimely

8    claim, but even then, the application may not exceed one year after the accrual of the cause of

9    action.  Cal. Gov't Code § 911.4(b).  Plaintiff's September 17, 2012 complaint, even if construed

10   as an application to submit an untimely claim, was not within one year of the incident giving rise

11   to Plaintiff's state law tort claims.

12        Plaintiff's final argument is similarly unavailing.  Plaintiff contends that Defendants failed

13   to meet their burden under California Government Code § 946.4.  However, § 946.4 only applies

14   to "public agencies" as defined in § 53050, and § 53050 expressly excludes cities such as the City

15   of Hayward from being considered a "public agency."  *See* Cal. Gov't Code §§ 946.4; 53050.

16        The Court finds that Plaintiff fails to allege compliance with the CTCA in both his Second

17   Amended Complaint and his Opposition.  Moreover, Plaintiff has not alleged any facts which

18   would excuse his noncompliance.  *See Bodde*, 32 Cal.4th at 1245 (failure to allege facts

19   demonstrating or excusing compliance with the CTCA subjects a complaint to a general

20   demurrer).  Accordingly, Plaintiff's state law claims for assault, battery and false imprisonment

21   are DISMISSED WITH PREJUDICE.

22        **B.      Federal Law Claims**

23        Plaintiff also asserts federal claims arising under the Civil Rights Act, 42 U.S.C. §§ 1983,

24   1985 and 1986, which are not barred by Plaintiff's failure to comply with the CTCA.  *Williams v.*

25   *Horvath*, 16 Cal.3d 834, 842 (1976) ("the California remedy of recourse to the Tort Claims Act

26   need not be first sought before a plaintiff is free to invoke the Civil Rights Act").  The Court will

27   address each section under the Civil Rights Act separately.

28

United States District Court
Northern District of California

8

1        **1.**    *42 U.S.C. § 1983*

2        Section 1983 provides a cause of action against any person who, under color of state law,

3    deprives another of any rights, privileges, or immunities secured by the Constitution and laws of

4    the United States.  Section 1983 is not a source of substantive rights, but merely a method for

5    vindicating federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94

6    (1989).  In order to state a claim for a violation of 1983, a plaintiff must allege deprivation of a

7    constitutional right by a government official acting "under the color of state law."  *Broam v.*

8    *Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

9        Plaintiff's Second Amended Complaint sufficiently alleges that Defendants acted "under

10   the color of state law."  *See  Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)

11   (allegations against public officials satisfies the state action requirement).  Therefore, the next

12   step is to determine whether Defendants' actions deprived him of his constitutional rights.

13   Plaintiff asserts that Defendants deprived him of his constitutional rights by (1) unlawfully

14   arresting him, and (2) using excessive force during that arrest.  Defendants allege that there was

15   no violation of Plaintiff's constitutional rights, and in any event, the officers are entitled to

16   qualified immunity as a matter of law.

17       Qualified immunity protects government officials performing discretionary functions

18   "from liability for civil damages insofar as their conduct does not violate *clearly established*

19   statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

20   *Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added).  "Qualified immunity balances two

21   important interests—the need to hold public officials accountable when they exercise power

22   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

23   perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The Supreme

24   Court has stated that the "driving force behind the creation of the qualified immunity doctrine was

25   a desire to ensure that insubstantial claims against government officials will be resolved prior to

26   discovery."  *Id*. (internal citations omitted).  Thus, courts should resolve questions of qualified

27   immunity "at the earliest possible stage in litigation."  *Id*. at 231-32 (citing *Hunter v. Bryant*, 502

28   U.S. 224, 227 (1991).

United States District Court
Northern District of California

There are two questions in the qualified immunity analysis: (1) whether there was a deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident. *See Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson*, 555 U.S. at 232. In *Saucier*, the Supreme Court held that the qualified immunity analysis must be done in a two-step sequenced order in which district courts first determine whether there was a violation of the plaintiff's constitutional rights, and only then determine whether that right was "clearly established." *Saucier*, 533 U.S. at 201. However, in *Pearson*, the Supreme Court receded from *Saucier* and held that the qualified immunity analysis need not be done in any particular order. *Pearson*, 555 U.S. at 236. The Court recognized that while *Saucier*'s mandate may have a beneficial effect on the development of precedent, "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. at 237.

Applying the law to the facts of this case, the Court will now look to whether Plaintiff's claims for false arrest and excessive force fail as a matter of law. In order for each claim to survive Defendants' Motion to Dismiss, Plaintiff's allegations must establish that Defendants deprived him of a constitutional right which was "clearly established" in the view of a reasonable police officer at the time the alleged constitutional violation took place.

### i. *Unlawful Detention*

Plaintiff alleges that Defendants deprived him of his rights under the Fourth Amendment to be free of unreasonable search and seizure when they falsely arrested him without probable cause. SAC ¶¶ 32-37. In response, Defendants argue that Plaintiff uses the word "arrest," but his factual allegations show he was never in fact arrested because Plaintiff does not allege he was handcuffed, taken to the police station, or prosecuted for the crime. Motion at 8. The determination of a *de facto* arrest is context-specific, and the Court need not decide this issue because Plaintiff adequately alleges an improper *Terry* stop. The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of a traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

In *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the U.S. Supreme Court distinguished Fourth Amendment protections in the contexts of "arrests," which require probable cause, from "investigatory detentions," which require something less than probable cause. *Id.* at 16. In order to briefly detain a suspect for an investigatory detention, also known as a "stop and frisk" or "*Terry* stop," the police must have a "reasonable suspicion" that the suspect has committed or will soon be committing a crime. *Id.* at 37. Determining whether the police have a "reasonable suspicion" has not been reduced to "a neat set of legal rules," but rather takes into account the totality of the circumstances. *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)). For an investigatory detention to be lawfully based upon a reasonable suspicion, the police "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (internal citations omitted). "Rather, reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *Montero-Camargo*, 208 F.3d at 1129. To be sufficiently particular, the officer's assessment of the circumstances "must arouse that *the particular person being stopped* has committed or is about to commit a crime." *Id.* (emphasis in original).

The requirement that a reasonable suspicion be particularized precludes police officers from stopping an individual based on "broad profiles which case suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." *Montero-Camargo*, 208 F.3d at 1131-32 (citing *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994)) (holding that an individual's Hispanic appearance was not a proper factor to consider in determining whether Border Patrol agents had a "reasonable suspicion" to stop him; *see also United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006) (same); *United States v. Sigmond-Ballesteros*, 285 F.3d 1117 (9th Cir. 2002) (same). In *Montero-Camargo*, the court reasoned that "in an area in which a large number of people share a specific characteristic, that characteristic casts too wide a net to play any part in a particularized reasonable suspicion determination." *Id.* at 1134.

United States District Court
Northern District of California

1    Here, assuming all allegations as true on Defendant's Motion to Dismiss, Plaintiff

2  sufficiently states facts entitling him to relief under § 1983 for an unlawful detention in violation

3  of the Fourth Amendment.  Plaintiff alleges that he was stopped by Officers Jimenez, Anderson

4  and Rodriguez while crossing Mission Boulevard on his way to pick up his seven-year-old

5  nephew to take him to the skateboard park.  SAC ¶ 8.  Plaintiff had just exited a bus on Mission

6  Boulevard which he had taken from the South Hayward BART station.  *Id.*  This is not conduct

7  which could have raised an objectively reasonable suspicion that Plaintiff had committed or

8  would soon be committing a crime.  *Terry*, 392 U.S. at 37.  Plaintiff's allegations, if true, would

9  establish that Defendants Jimenez, Anderson and Rodriguez stopped and frisked him on July 8,

10  2011 without a reasonable suspicion in violation of the Fourth Amendment.

11    Although one officer informed Plaintiff of facts that could amount to reasonable

12  suspicion—that Plaintiff fit the description of a suspect who had attempted to snatch women from

13  their cars, rob and rape them, and that one officer followed Plaintiff while he walked down

14  Mission Boulevard from the South Hayward BART station (which was presumably near the scene

15  of the incident)—Plaintiff also sufficiently alleges that these statements were pretext.  *See id.* ¶

16  10.  Plaintiff alleges that he could not have been followed while he walked down Mission

17  Boulevard from the South Hayward BART station because he had not walked, but rather had

18  taken the bus and had a time-stamped Clipper Card as proof.  *Id*.  If Plaintiff's allegations are true,

19  then Defendants may not have had followed Plaintiff from an area near the scene of the crime,

20  and may not have had a reasonable suspicion that Plaintiff *in particular* had committed the crime.

21  *See Montero-Camargo*, 208 F.3d at 1129 (reasonable suspicion must be particularized as to the

22  person being stopped).  Plaintiff alleges that the officers' articulated 'reasonable suspicion' was

23  pretext, and that he was stopped not because he fit the description of the suspect, but rather

24  because he was African American and the officers wanted to run a warrant check.  Assuming

25  Plaintiff's allegations to be true, he sufficiently states a claim under § 1983 because this is an

26  impermissible basis to justify an investigatory stop.  *See Montero-Camargo*, 208 F.3d at 1131-32

27  (officers cannot base their reasonable suspicion on "broad profiles which case suspicion on entire

28  categories of people without any individualized suspicion of the particular person to be stopped").

Plaintiff also sufficiently alleges that the "reasonable suspicion" articulated by the police officers was pretext for running a search warrant on Plaintiff by alleging inconsistencies among the Hayward police officers.  According to Plaintiff, the officers made no attempt to have the victims identify him as their aggressor, but rather released him after his warrant check came back clean.  *Id*. ¶ 14.  However, when Plaintiff filed his complaint with the Hayward Police Department, Defendant Pola informed him that he was released after the victims failed to identify him.  *Id*. ¶ 19.  Plaintiff does not know whether Defendant Pola's incorrect statement was made in earnest or was part of a greater scheme, but his allegations, assuming them as true, would could give rise to the plausible inference that Defendants Jimenez, Anderson and Rodriguez sought to cover up the unlawful detention by misinforming their supervisor as to the true facts of the encounter.  Assuming Plaintiff's allegations to be true, Plaintiff has made out a sufficient claim that he was unlawfully detained in violation of the Fourth Amendment.

Moreover, the Court finds that, at least at the pleading stage, Plaintiff's right to be free from unlawful detention is "clearly established" as a matter of law.  *See Pearson*, 555 U.S. at 236.  Since 1968, the Supreme Court has required police officers to have reasonable suspicion before they stop and frisk someone on the street.  *See Terry*, 392 U.S. at 37.  Any reasonable officer would have known that they cannot stop an individual based on the color of their skin to run a search warrant.  Therefore, Defendants Jimenez, Anderson and Rodriguez are not entitled to qualified immunity at this stage of the case, and Plaintiff's Fourth Amendment claim against them based on this detention withstands the Motion to Dismiss.[3]

### ii.   *Excessive Force*

Plaintiff also brings a § 1983 claim for excessive force based upon the acts which transpired while Plaintiff was allegedly unlawfully detained.  Plaintiff states that once he was on the ground as ordered, and after he had tried to explain that he had not walked from the South Hayward Bart station, but rather walked, one of the three officers (Plaintiff does not specify which one), "sprayed Mr. Bedford's face with sputum for several minutes [while he yelled at

---

[3] Plaintiff's § 1983 claim against Defendants Pola, Orrey and Palermini, as well as the City of Hayward, are assessed in the context of supervisor liability and *Monell* liability in the following sections.

1   Plaintiff] and repeatedly struck Mr. Bedford in his face with his finger."  SAC ¶ 39.  Plaintiff

2   alleges the officer put his face so close to Plaintiff's that their noses almost touched, and although

3   Plaintiff moved his face from left to right to avoid the officer's foul breath and sputum, the officer

4   shadowed Plaintiff's movement so that after a few minutes, Plaintiff's face was covered with the

5   officer's saliva.  *Id.* ¶ 13.

6        In *Graham v. Connor*, the U.S. Supreme Court held that where an excessive force claim

7   arises in the context of an arrest or investigatory stop of a free citizen, it is most properly

8   characterized as one invoking the protections of the Fourth Amendment.  490 U.S. 386 (1989).

9   To determine whether the force used was reasonable, courts are instructed to balance "the nature

10  and quality of the intrusion on the individual's Fourth Amendment interests against the

11  countervailing governmental interests at stake."  *Id.* at 396 (citations omitted).  "The

12  'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

13  officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight."  *Id.* (citing *Terry*, 392 U.S. at

14  20-22).

15       Defendants move to dismiss Plaintiff's excessive force claim on the grounds that Plaintiff

16  has alleged "no physical injuries resulting from the minor contact between Plaintiff and the one

17  unnamed defendant."  Motion at 10.  Rather, Plaintiff's only allegation of any physical contact

18  consists only of the officer "touching" Plaintiff's face with his finger and spraying Plaintiff's face

19  with saliva while the officer spoke.  *Id.*  Defendants cite cases from other circuits which hold that

20  an actual injury is required for a claim that police officers used excessive force.  *See Hanig v. Lee*,

21  415 F.3d 822, 824 (8th Cir. 2005) (holding than "[a]n 'actual injury must be shown to support an

22  excessive force claim under the Fourth Amendment.");  *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir.

23  2000) (holding that *de minimis* force, as a matter of law, cannot support a claim for excessive

24  force).  The Ninth Circuit has not developed a similar doctrine, but does consider the "gravity of

25  the particular intrusion" and the "type" and "amount" of force in the first step of a three-step

26  analysis to determine whether the amount of force used was excessive.  *Miller v. Clark County*,

27  340 F.3d 959, 964 (2003).  The next two steps are to consider the governmental interests at stake

28

United States District Court
Northern District of California

14

United States District Court
Northern District of California

by evaluating the factors set forth by the Supreme Court in *Graham*,[4] and then to balance the gravity of the intrusion of the individual against the government's interests. *Id*. However, the Court declines to decide whether the alleged conduct constitutes excessive force, and thus deprived Plaintiff of his constitutional rights, because it is clear the alleged conduct did not violate a "clearly established" constitutional right. *See Pearson*, 555 U.S. at 236 (in determining whether officers are entitled to qualified immunity, courts may first determine that a right is not "clearly established" without determining whether there was a deprivation of constitutional rights).

Here, Plaintiff does not bring an "excessive force" claim in the traditional sense, but rather alleges that force inflicted upon him constituted an affront to his dignity. There was no allegation of a physical injury resulting from the tapping of the officer's finger on Plaintiff's face or the spray of the officer's saliva, but Plaintiff does allege actions on part of the officer which were degrading and intrusions on Plaintiff's personal dignity interests. There is some support for excessive force claims based on dignity interests where the conduct amounts to "unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (finding excessive force where police officers, while executing a search warrant, took an unarmed, ill, and pantless man out of his bed, handcuffed him, and made him sit on the living room floor). However, even applying *Foxworth*, the Court can discern no "clearly established" right that the officers have violated here. There is no statute or case law which prohibits law enforcement from tapping someone on the head with their finger, or which instructs officers to stay far enough from a suspect's face such that they do not spray saliva. Therefore, Defendants are entitled to qualified immunity as a matter of law on Plaintiff's § 1983 claim for excessive force.[5]

---

[4]   These factors include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

[5]   The Court dismisses the excessive force claim as to all Defendants.

### iii.   *Supervisor Liability*

According to Plaintiff, Defendants Pola, Orrey and Palermini were not at the scene during the encounter, but nevertheless were supervisors who condoned the constitutional violations, namely, an unlawful detention without reasonable suspicion.  To the extent Plaintiff sues these officers in their official capacity, such a claim "is equivalent to a suit against the government entity itself," and will be assessed in the context of *Monell* liability below.  *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  First, however, the Court will determine whether these officers may be held liable in their individual capacities as supervisors.

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.'"  *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (citing *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).  A supervisor may be held liable for 1) his "own culpable action or inaction in the training, supervision, or control of his subordinates," 2) for his "acquiescence in the constitutional deprivations of which the complaint is made," or 3) for conduct that showed a "reckless or callous indifference to the rights of others."  *Larez*, 946 F.2d at 646 (internal citations omitted).  In determining whether Defendants Pola, Orrey and Palermini may be subject to supervisor liability, a few Ninth Circuit cases are instructive.

In *Larez*, the Ninth Circuit upheld a jury verdict holding a Los Angeles Chief of Police individually liable for ratifying his officers' use of excessive force by signing a letter denying the plaintiff's complaint when expert testimony showed he should have disciplined the officers and established new police procedures.  *See Larez,* 946 F.2d at 646.  The court held this evidence was sufficient for a jury to find that the Chief  "condoned, ratified, and encouraged excessive use of force" among the officers he supervised.  *Id.*

Similarly, in *Watkins v. City of Oakland*, the Ninth Circuit affirmed the district court's denial of qualified immunity on summary judgment because the Chief of Police dismissed a complaint against an officer in a dog bite incident, where the officer had been accused of using excessive force in previous dog bite incidents.  145 F.3d 1087, 1093-94 (9th Cir. 1998).  The

1    court held it was clearly established in *Larez* that a jury could hold the Oakland Chief of Police

2    liable for ratifying the use of excessive force where previous evidence established a pattern.  *Id.*

3            In *Blankenhorn v. City of Orange*, the Ninth Circuit reversed summary judgment which

4    granted qualified immunity to a supervisor.  485 F.3d 463, 485-86 (9th Cir. 2007).  The

5    supervisor had approved the evaluation of a subordinate police officer accused of using excessive

6    force, where that officer had previously been accused of using excessive force on three occasions

7    and had also been disciplined.  *Id.*  The court found that even though the supervisor did not

8    personally dismiss the complaints against the police officers, *Larez* and *Watkins* were similar

9    enough to deny summary judgment after the supervisor had approved the subordinate officer's

10   evaluation.  *Id.*

11           Based on the foregoing precedent, the Court cannot find that Defendants Pola, Orrey and

12   Palermini should be dismissed from this case as a matter of law.  According to Plaintiff,

13   Defendants Pola, Orrey and Palermini are the supervisors of the three officers who allegedly

14   unlawfully detained him.  Like the plaintiffs in *Larez*, *Watkins* and *Blankenhorn*, Plaintiff's

15   principal complaint against these officers is that they failed to conduct an adequate investigation

16   or otherwise discipline the offending officers.  If the evidence shows the three officers violated

17   Plaintiff's constitutional rights, the evidence may also show that Defendants Pola, Orrey and

18   Palermini should also be held liable for "exonerating" the officers.  *See Blankenhorn*, 485 F.3d at

19   485 (dismissing a complaint or approving an evaluation of a subordinate officer with a history of

20   claims against him may be sufficient to hold a supervisor individually liable under § 1983).  Thus,

21   the Court finds that Plaintiff's allegations are sufficient to state a claim of supervisor liability on

22   part of Defendants Pola, Orrey and Palermini.  This question is more properly reserved for

23   summary judgment.

24                            iv.      *Monell Liability*

25           Plaintiff also asserts a § 1983 claim against the City of Hayward as well as Defendants

26   Pola, Orrey and Palermini in their official capacities.  In *Monell v. Department of Social Services*,

27   the Supreme Court held that a municipality cannot be held liable under a *respondeat superior*

28   theory, but may be liable under § 1983 for constitutional violations that result from enforcement

United States District Court
Northern District of California

of the municipality's official "policies and customs."  436 U.S. 658, 694 (1978).  The Court stated that a "policy" consists of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell,* 436 U.S. at 690.  An "unconstitutional governmental policy could [also] be inferred from a single decision taken by the *highest officials* responsible for setting policy in that area of the government's business."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (emphasis added).  If there is no unconstitutional policy, a municipality can only be liable if there is a "widespread" practice of unconstitutional conduct which is "so permanent and well settled as to constitute a 'custom or usage.'"  *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168 (1970)).  Thus, "[t]here are three ways to show a policy or custom of a municipality: (1) by showing 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;' or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'"  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citing *Ulrich v. City and Cnty of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002) (internal quotations omitted)).

In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits."  *Warner v. County of San Diego*, No. 10-1057, 2011 WL 662993, *4 (S.D. Cal. Feb. 14, 2011).  Prior the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice."  *Karim–Panahi v. Los Angeles Dept.*, 839 F.2d 621, 624 (9th Cir.1988).  However, such conclusory allegations will not suffice after *Twombly* and *Iqbal*, which require a plaintiff to state facts sufficient "to state a claim that is plausible on its face."  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).

1    Applying the foregoing principles to the facts of this case, the Court finds that Plaintiff has

2  failed to state claim for *Monell* liability under § 1983.  Plaintiff claims that the City of Hayward,

3  as well as Defendants Pola, Orrey and Palermini, should be held liable for "allowing employees to

4  use pretext to stop African Americans for warrant checks and immunizing its employees by

5  conducting sham investigations which occasioned the stops of African Americans."  SAC ¶ 58.

6  Plaintiff has not, however, pointed to any official policy or decision by a final policymaking

7  authority.  Plaintiff's *Monell* claim must therefore rely on the theory that there is a "widespread"

8  and "well-settled" custom of stopping African American males to run warrant checks.  *See*

9  *Praprotnik*, 485 U.S. at 123.

10    Although Plaintiff alleges this custom exists within the Hayward Police Department, he

11  fails to state facts sufficient to "state a claim that is plausible on its face."  *Iqbal*, 556 U.S. at 663

12  (citing *Twombly*, 550 U.S. at 547).  Plaintiff alleges that he was stopped on ten to twelve

13  occasions in the year prior to July 8, 2011, and in a similar manner, "was threatened with arrest,

14  ordered to the ground, his person and property searched, his identification taken from him and a

15  warrant check run."  *Id.* ¶ 7.  However, Plaintiff fails to state detailed facts similar to his account

16  of the July 8, 2011 incident.  *See id.*  Moreover, Plaintiff has not alleged that any other African

17  American male has been subjected to similar discriminatory treatment.  Thus, the Court cannot

18  infer from Plaintiff's allegations any plausible claim of "widespread" unconstitutional conduct

19  which is "so permanent and well settled as to constitute a 'custom or usage.'"  *Praprotnik*, 485

20  U.S. at 123.

21    Plaintiff also alleges that the City of Hayward acted with "deliberate indifference" as to

22  his constitutional rights.  Plaintiff retrieves the "deliberate indifference" language from the

23  Supreme Court's decision in *City of Canton v. Harris*, where the Court held that a policy of

24  inadequate training or supervision may also give rise to 1983 municipal liability, but "only where

25  the failure to train amounts to *deliberate indifference* to the rights of persons with whom the

26  police come into contact."  489 U.S. 378, 388 (1989) (emphasis added) (holding the City of

27  Canton liable for failing to train police officers to properly handle medical emergencies).

28  Although Plaintiff may allege that Defendants Jimenez, Rodriguez and Anderson committed

United States District Court
Northern District of California

19

1   unconstitutional acts as a result of inadequate training, the Supreme Court also clearly stated in

2   *Harris* that "the focus must be on adequacy of the training program in relation to the tasks the

3   particular officers must perform[,]" not that "particular officer may be unsatisfactorily trained[.]"

4   *Id.*  Plaintiff has made no allegation regarding any official training policy within the Hayward

5   Police Department.  Accordingly, his *Monell* claim must be dismissed, though with leave to

6   amend.

7          ## 2.      *42 U.S.C. § 1985*

8          Plaintiff also alleges that Defendants are liable under 42 U.S.C. § 1985(3), which prohibits

9   conspiracies which deprive individuals of rights or privileges.[6]  Like § 1983, § 1985 does not

10  provide substantive rights, but does provide a remedy against conspiracies to violate a person's

11  right to equal protection under the laws.  *See United Broth. of Carpenters & Joiners of Am., Local*

12  *610, AFL-CIO v. Scott*, 463 U.S. 825, 847 n. 10 (1983).  "In order to establish a claim under §

13  1985(3) a plaintiff must establish: (1) the existence of a conspiracy to deprive the plaintiff of the

14  equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting

15  injury."  *Duarte v. Freeland*, No. 05-02780, 2007 WL 2790591, *3 (N.D. Cal. Sept. 24, 2007)

16  (citing *Scott v. Ross,* 140 F.3d 1275, 1284 (9th Cir.1998)).  Additionally, the plaintiff must plead

17  "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

18  conspirators' action."  *Grifin v. Breckenridge,* 403 U.S. 88, 102 (1971).

19         The Court finds that Plaintiff has alleged sufficient facts to state a claim against

20  Defendants Jimenez, Rodriguez and Anderson under § 1985 by alleging a conspiracy to

21  unlawfully stop and run warrant checks on African American males.  SAC ¶ 43-50.  Plaintiff

22  alleges acts in furtherance of the conspiracy by describing the July 8, 2011 incident, as well as

23  alleging that the officers conspired to tell Plaintiff he fit the description of a suspect who had

24

25         [6] The Court construes Plaintiff's § 1985 claim as arising under § 1985(3) because the facts
26  alleged would not support a claim under § 1985(1) ("Preventing officer from performing duties")
    or § 1985(2) ("Obstructing justice; intimidating party, witness or juror").  Rather, the facts alleged
27  most closely support a claim arising under § 1985(3) ("Depriving persons of rights or
    privileges").  *See* 42 U.S.C. § 1985.
28

attempted to rob, rape and kidnap women from their cars as pretext for running a warrant check. The Court finds these allegations sufficient to survive Defendants' Motion to Dismiss.

Defendants argue that Plaintiff's § 1985 claim must fail because the Second Amended Complaint is devoid of any factual allegation showing an agreement or concerted activity. Motion at 13. However, "[a] conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (citing *Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311, 314 (9th Cir.1983)). Thus, it is sufficient that Plaintiff alleges Defendants Jimenez, Rodriguez and Anderson acted in concert to detain Plaintiff and attempt to deceive Plaintiff into believing that his detention was lawful.

Defendants also argue that Plaintiff failed to specify that each named Defendant was motivated by racial animus. Motion at 13. However, Defendants cite no authority that Plaintiff must allege racial animus on behalf of each individual conspirator, rather than merely alleging "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Grifin v. Breckenridge,* 403 U.S. 88, 102 (1971). Under prevailing precedent, Plaintiff sufficiently alleges that he was unlawfully detained in furtherance of a conspiracy because he was African American.

Although the Court finds that Plaintiff has stated a conspiracy claim under § 1985(3) as to Defendants Jimenez, Rodriguez and Anderson, Plaintiff has failed to meet this same burden as to Defendants Pola, Orrey and Palermini. "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Policy Dep't,* 839 F.2d 621, 626 (9th Cir.1988); *see also Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547). Unlike the officers who actually detained Plaintiff, Defendants Pola, Orrey and Palermini are merely accused of peripheral acts because they were not at the scene of the incident. For example, Plaintiff alleges Defendant Pola perpetuated the officers' pretext by telling Plaintiff he was released after the victims did not identify him, even though this was not true. *Id.* ¶ 46. However, there is no allegation that Defendant Pola knew that this statement was not true and tried to cover up the other officers' alleged misconduct. Moreover, the allegations that Defendants Pola, Orrey and Palermini acted in furtherance of the conspiracy by failing to discipline the officers, or by

21

1   refusing to inform Plaintiff of the officers' names for several months, are insufficient to make out

2   a claim for conspiracy based on racial animus.  *See Karim-Panahi*, 839 F.2d at 626.  The Court

3   therefore dismisses Plaintiff's § 1985 claim against Defendants Pola, Orrey and Palermini with

4   leave to amend.

### 3.   *42 U.S.C. § 1986*

6       Section 1986 provides a cause of action against anyone who has "knowledge that any of

7   the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be

8   committed, and having the power to prevent or aid in preventing the commission of the same,

9   neglects or refuses so to do."  42 U.S.C. § 1986.  A claim can be stated under § 1986 only if the

10  complaint contains a valid claim under § 1985.  *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th

11  Cir. 1985).  Section 1986 "does not require that the [defendants] themselves participated in the

12  conspiracy or shared in the discriminatory animus with members of the conspiracy.  Section 1986

13  requires only that [defendants] knew of a § 1985 conspiracy and, having the power to prevent or

14  aid in preventing the implementation of the conspiracy, neglected to do so."  *Park v. City of

15  Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997).

16      The Court finds that Plaintiff's allegations against Defendants Pola, Orrey and Palermini,

17  while insufficient to support a claim arising under § 1985(3), are sufficient for a claim under §

18  1986.  Plaintiff alleges that Defendants Pola, Orrey and Palermini were the supervisors of the

19  three officers who allegedly detained him without reasonable suspicion.  Thus, they were in a

20  position to "prevent or aid in preventing" the implementation of a conspiracy to stop African

21  Americans for the purpose of running a warrant check.  Plaintiff need not allege that Defendants

22  Pola, Orrey and Palermini were motivated by racial animus or participated in the conspiracy

23  themselves.  *Park*, 120 F.3d at 1160.  Plaintiff has sufficiently alleged they "were in a position to

24  prevent the implementation of that conspiracy, and neglected or refused to prevent it," thus stating

25  a claim entitling him to relief under § 1986.  *Id*.

## V.   CONCLUSION

27      Based on the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part

28  and DENIED in part.  Plaintiff's § 1983 claim against Defendants Jimenez, Rodriguez and

United States District Court
Northern District of California

1  Anderson for unlawful detention, and against Defendants Pola, Orrey and Palermini based on

2  their supervisor liability, survive Defendants' Motion to Dismiss.  Plaintiff's § 1985(3) claim

3  against Defendants Jimenez, Rodriguez and Anderson, and § 1986 claim against Defendants Pola,

4  Orrey and Palermini, also withstand Defendant's Motion.

5       Plaintiff's *Monell* claim against the City of Hayward and supervisors in their official

6  capacity, as well as his § 1985(3) claim against Defendants Pola, Orrey and Palermini are

7  DISMISSED WITH LEAVE TO AMEND.  Should Plaintiff choose to amend these claims, he

8  must file an amended complaint within THIRTY (30) days of this Order.  To sufficiently allege a

9  *Monell* claim, Plaintiff must state facts to allege a plausible claim against the City of Hayward for

10 implementing a policy or custom of unlawfully detaining African Americans for the purpose of

11 running warrant checks.  To sufficiently allege a § 1985(3) claim against Defendants Pola, Orrey

12 and Palermini, Plaintiff must state facts to allege a plausible claim that Defendants Pola, Orrey

13 and Palermini took part in a conspiracy to deprive African Americans of their constitutional

14 rights.

15       All other claims are DISMISSED WITH PREJUDICE.[7]

16       IT IS SO ORDERED.

17 Dated: October 15, 2012

18

19                                          Joseph C. Spero
                                            United States Magistrate Judge
20

21

22

23

24

25

26

27

28       [7] In light of Plaintiff's *pro se* status, the Court GRANTS Plaintiff's Motion to extend the
    time to file his Opposition to Defendants' Motion to Dismiss by five days.  *See* Dkt. No. 57.